IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. | § | |
| LINNEA ROSE, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:05-CV-216 (TJW) |
| | § | |
| EAST TEXAS MEDICAL CENTER | § | |
| REGIONAL HEALTHCARE SYSTEM, | § | |
| and EAST TEXAS MEDICAL CENTER | § | |
| ATHENS, | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss (#13) and Relator Linnea Rose's Motion to Convert Defendants' Motion to Dismiss into a Summary Judgment Motion (#17). Relator's Motion to Convert Defendants' Motion to Dismiss into a Summary Judgment Motion is GRANTED. The defendants' motion to dismiss is DENIED.

**I.   Background**

This *qui tam* action is brought pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and filed by the Relator under seal on June 8, 2005. The United States declined to intervene in this action and the Court ordered the complaint unsealed on February 6, 2007. Prior to filing an answer, the defendants filed their motion to dismiss pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction.

Defendant East Texas Medical Center Regional Healthcare System ("ETMCRHS") is a hospital conglomerate that owns and operates private hospital facilities in East Texas, including Defendant East Texas Medical Center Athens. Relator alleges that the defendants devised and

implemented a scheme in order to fraudulently receive additional Medicaid matching funds from the federal government by illegally abusing the intergovernmental transfers ("IGT") procedure for the Medicaid Upper Payment Limits ("UPL") program.

In general, Medicaid is a jointly funded state and federal program that provides medical assistance to needy persons. The UPL program allows states to reimburse public rural hospitals for certain uncompensated care provided under Medicaid at an amount equal to what Medicare would have paid for the same service. IGT is used to provide the state's contribution to the UPL payments and can be used to claim additional federal funds. Federal regulations require states to separate UPLs by facility type because public hospitals are reimbursed at a higher percentage than private non-profit hospitals.

According to Relator, the defendants' scheme worked as follows: The Henderson County, Texas Hospital Authority opening a bank account with money provided by the defendants. Relator alleges that once the bank account was opened and funded, there was an intergovernmental transfer from the bank account to the State of Texas. Relator claims that the federal government then matched the funds, based on the state's federal matching rate, and transferred the money back to the bank account. According to Relator, the money was then transferred to the defendants. Relator alleges that this scheme allowed the defendants to receive matching funds as if they were public hospitals.

**II.     Discussion**

The FCA prohibits false or fraudulent claims for payments to the United States and permits civil actions to remedy such fraud to be brought by private individuals on behalf of the United States. 31 U.S.C. § 3730. The FCA, however, provides that "[n]o court shall have jurisdiction over an

action under this section based upon the public disclosure or transactions in a criminal, civil, or administrative hearing, . . . or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

The defendants rely on the public disclosure bar to support their motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Relator also brings a motion to convert the defendants' motion to dismiss into a summary judgment motion. The Court first turns to Relator's motion in order to determine the proper standard for addressing the defendants' motion to dismiss.

### A. Standard of Review

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be advanced as a "facial" attack or a "factual" attack. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack on subject matter jurisdiction will succeed only if the plaintiff has failed to allege facts necessary for jurisdiction. *Id*. at 523. In a factual attack, the plaintiff has the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. *Id*. An attack under Rule 12(b)(1) is initially presumed to be facial unless evidence such as affidavits or testimony is presented to create a factual attack. *Id*. In the present case, the defendants have presented affidavits in support of their position. The defendants have, therefore, presented a factual challenge under Rule 12(b)(1).

In a *qui tam* case, subject matter jurisdiction depends on the same statute that creates the

substantive claim. The jurisdictional inquiry is, therefore, intertwined with the merits and is properly treated as a motion for summary judgment. *United States ex. rel. Laird v. Lockheed Martin Engineering & Science Services, Co.*, 336 F.3d 346, 350 (5th Cir. 2003), *abrogated by Rockwell Int'l Corp. v. United States*, 127 S.Ct. 1397 (2007). Accordingly, the Court exercises its discretion and converts the defendants' Rule 12(b)(1) motion to dismiss for lack of jurisdiction into a motion for summary judgment under Rule 56(c).

   **B.**  **Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id*. If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id*. at 249. At the summary judgment stage, a court may not weigh the evidence or evaluate the credibility of witnesses, all justifiable inferences will be made in the non-moving party's favor. *Id*. at 255.

Under Rule 56(c), the moving party bears the initial burden of identifying those portions of the record that demonstrate an absence of genuine issue for trial. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once the moving party has met is burden under Rule 56(c), the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Anderson*, 477 U.S. at 252.

    **C.**    **Public Disclosure Bar**

The public disclosure bar seeks to prohibit *qui tam* actions where the allegation of fraud or the critical elements of the fraudulent transaction are in the public domain. *United States ex rel. Springfield Terminal Railway v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). The jurisdictional inquiry under section 3730(e)(4)(A) involves three questions: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." *Laird*, 336 F.3d at 352 (citing *Federal Recovery Services, Inc. v. Crescent City E.M.S.*, 72 F.3d 447, 451 (5th Cir. 1995)). This jurisdictional bar promotes the primary goals of the FCA: (1) "promoting private citizen involvement in exposing fraud against the government" and (2) "preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *Id*. at 351 (citing *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1511 (8th Cir. 1994)).

    **1.**    **"Public Disclosure" of Allegations or Transactions**

"Public disclosure" of allegations or transactions may occur in "a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigations, or from the news media." 31 U.S.C. § 3730(e)(4)(A). The defendants contend that the transactions at issue were publicly disclosed before Relator's complaint was filed. According to the defendants, the transactions described in Relator's complaint were based on public proceedings of the Henderson County Hospital Authority ("HCHA") in 2002. The

defendants contend that the HCHA Board meetings on July 19, 2002 and December 2, 2002[1] were public "administrative hearings."[2] Relator, on the other hand, contends that the board meetings were not "public" and were not "administrative hearings" under the FCA. Specifically, Relator argues that "hearing" must be "an adversarial process which allows for the introduction of evidence and full exploration of issues." *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 21 F. Supp. 2d 607, 614 (E.D. La. 1998). In reply, the defendants contend that the HCHA meetings were publicly noticed and were open to the public, and, therefore, should be considered "administrative hearings" under the FCA.

The Fifth Circuit has not determined the boundaries of "administrative hearing." *Id*. Other circuits, however, have interpreted "hearing" to encompass federal, state, and local administrative proceedings that are open to the public and that receive public comments. *See A-1 Ambulance Service, Inc. v. California*, 202 F.3d 1238, 1243-44 (9th Cir. 2000). In *A-1 Ambulance*, the county hearings consisted of several extensive public proceedings that invited and received public comment. *Id*. All documents relevant to the proceedings were openly distributed and made part of the official public record. *Id*. at 1244.

Here, the parties do not appear to dispute that the HCHA meetings were open to the public as stated in the notices.[3] *See* Affidavit of Patrick Wallace, at Ex. 1, 2. There is no evidence,

---

[1] Relator acknowledges that the information upon which her complaint is based derives solely from the July 19, 2002 and December 2, 2002 HCHA Board meetings. *Relator's Response to Defendants' Motion to Dismiss*, at 17.

[2] The defendants do not present any argument or evidence that the HCHA Board meetings would qualify as any other source or context of public disclosure recognized by the FCA.

[3] Relator does dispute whether the notices were actually posted.

however, that the HCHA meetings were extensive proceedings or that the subject matter discussed was part of other ongoing proceedings conducted by the HCHA. Furthermore, there is no evidence that the meetings invited or received public comment or that relevant documents were openly distributed. The Court, therefore, cannot find as a matter of law that the HCHA Board meetings fall under the category of "administrative hearings" as listed in the public disclosure bar of the FCA. Accordingly, the defendants have not shown a "public disclosure" under the FCA such that this Court is divested of subject matter jurisdiction.

### 2. "Based Upon" and "Original Source"

The parties do not appear to dispute that Relator's *qui tam* action is based, in part, on the HCHA Board meeting minutes. However, because there has been no "public disclosure" under the FCA, the Court does not need to address whether Relator was an "original source."

## III. Conclusion

The defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction attacks the factual validity of Relator's complaint. Accordingly, the Court exercises its discretion and converts the defendants' motion to dismiss into a motion for summary judgment. Relator's Motion to Convert Defendants' Motion to Dismiss into a Summary Judgment Motion is GRANTED.

After considering the evidence submitted by the parties, the Court finds that the HCHA Board meetings do not constitute an "administrative hearing" under the FCA. Accordingly, the public disclosure bar does not divest this Court of subject matter jurisdiction in this case. Defendants' Motion to Dismiss is DENIED.

SIGNED this 13th day of August, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE